UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Adam Cijka,

       Plaintiff,

      v.                                 Civil Action No. 2:13-cv-173

Commissioner of Social Security,

       Defendant.

**REPORT AND RECOMMENDATION**
(Docs. 4, 7)

Plaintiff Adam Cijka brings this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, requesting review and remand of the decision of the Commissioner

of Social Security ("Commissioner") denying his application for disability insurance

benefits.  Pending before the Court are Cijka's motion to reverse the Commissioner's

decision (Doc. 4), and the Commissioner's motion to affirm the same (Doc. 7).  For the

reasons stated below, I recommend that Cijka's motion be DENIED, and the

Commissioner's motion be GRANTED.

**Background**

Cijka was 26 years old on his alleged disability onset date of January 1, 2005.  He

dropped out of high school in his senior year, but thereafter obtained his GED.  (AR 34,

78.)  He has experience working as a prep cook/dishwasher, a cleaner, a warehouse

worker, and a laborer for a lumber company.  The longest period he has held a job was

for approximately 18 months, as a prep cook/dishwasher/expediter at Applebee's Restaurant.  (AR 79, 484.)  Cijka has two young children and has never been married. (AR 33, 484.)  He does not live with or provide primary care for his children, and testified that he was homeless at both his April 2011 and April 2012 administrative hearings.  (AR 33, 77.)

Cijka had a difficult childhood, exhibiting behavioral problems at a young age. (AR 484.)  By age 13, he was diagnosed with depression, anxiety, and attention deficit disorder.  (AR 483.)  At age 19, he was charged with armed robbery and forgery, and received a prison sentence of 2-to-13 years.  (AR 484.)  Since 1999, he has had two lengthy periods in jail plus numerous shorter periods, spending a total of almost seven years in jail.  (*Id.*)  His most recent incarceration was from approximately September 2006 until April 2008.  (AR 45.)

Cijka has osteoarthritis in his left hip and was diagnosed with left hip dislocation at the age of 10 or 11.  (AR 483, 687, 714.)  In 1991, he had hip surgery, and he is expected to require a total hip replacement in the future.[1]  (AR 366, 368.)  Cijka has a significant history of substance abuse, including intravenous use of cocaine and heroin, and has had multiple inpatient treatments and relapses.  (AR 483-85.)  In April 2009, he had an inpatient treatment for substance addiction at Serenity House.  (AR 485.)  While there, he was diagnosed with opioid, cocaine, and nicotine dependence, rule out depression, and rule out attention deficit disorder.  (*Id.*; AR 505.)  He was noted to be

---

[1]  Cijka does not contest the ALJ's assessment of his physical impairments including his hip problems.  Thus they are not addressed herein, other than to provide background factual information.

unemployed, and have inadequate social support, inadequate finances, and a long history

of incarceration.  (AR 485.)  In May 2009, he was discharged from Grace House as a

result of being returned to jail due to lack of housing.  (AR 506.)  He was noted to have a

poor prognosis because he "did not seem to take his sobriety seriously and [was] at high

risk for relapse."  (*Id.*)

In May 2009, Cijka filed applications for supplemental security income and

disability insurance benefits.  In his disability application, he alleged that, beginning on

January 1, 2005, he has been unable to work due to osteoarthritis, learning disabilities,

and a traumatic brain injury.  (AR 322.)  Cijka explained that he has "pseudo seizures

which can interfere with [his] ability to work . . . and comprehend instruction rationally."

(*Id.*)  He further stated that he cannot stand or walk for long periods of time, and his

hands sometimes "lock up."  (*Id.*)  Cijka's application was denied initially and on

reconsideration, and he timely requested an administrative hearing.

In April 2011, a hearing was conducted by Administrative Law Judge ("ALJ")

Dory Sutker.  (AR 70–102.)  Cijka appeared and testified, and was represented by an

attorney.  In May 2011, the ALJ issued a decision finding that Cijka was not disabled

from his alleged disability onset date through the date of the decision.  (AR 112–22.)  A

few months later, the Appeals Council vacated that decision and remanded the claim to

the ALJ with instructions to offer Cijka an opportunity for another hearing and issue a

new decision.  (AR 127–29.)  On April 3, 2012, a second administrative hearing was held

by ALJ Sutker.  (AR 25–69.)  Cijka again appeared and testified, and was represented by

an attorney.  A medical expert also testified at the hearing.  (AR 51–68.)  On April 19,

2012, the ALJ issued a decision again finding that Cijka was not disabled from his alleged disability onset date through the date of the decision.  (AR 9–19.)  Thereafter, the Appeals Council denied Cijka's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1–3.)  Having exhausted his administrative remedies, Cijka filed the Complaint in this action on June 12, 2013.  (Doc. 1.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  The fourth step requires the ALJ to consider whether the

claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, in her April 2012 decision, ALJ Sutker first determined that Cijka had not engaged in substantial gainful activity since his alleged onset date of January 1, 2005.  (AR 11.)  At step two, the ALJ found that Cijka had the severe impairments of substance abuse and degenerative joint disease/Legg Perthes disease of the left leg.  (*Id.*)  Conversely, relying in part on the opinions of the agency psychological consultants and the medical expert who testified at the April 2012 administrative hearing, the ALJ found that Cijka's asthmatic bronchitis, personality disorder, brain injury, depression, attention deficit hyperactivity disorder, and anxiety were non-severe.  (AR 12.)  At step three, the ALJ found that none of Cijka's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 12–13.)

Next, the ALJ determined that Cijka had the RFC to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), except that he "require[d] the option to stand for

two[-]to[-three] minutes after sitting for one hour." (AR 14.) The ALJ further

determined that, "[d]ue to cognitive limitations stemming from drug abuse, [Cijka] [wa]s

limited to uncomplicated tasks," defined as "tasks that can be learned in less than 30

days." (*Id.*) Given this RFC, the ALJ found that Cijka was unable to perform his past

relevant work as a kitchen helper. (AR 17-18.) Nonetheless, the ALJ determined that,

considering Cijka's age, education, work experience, and RFC, there were jobs existing

in significant numbers in the national economy that he could perform. (AR 18.) The

ALJ concluded that Cijka had not been under a disability from the alleged onset date of

January 1, 2005 through the date of the decision. (AR 19.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A). A person will be found disabled only if it is determined that his

"impairments are of such severity that he is not only unable to do his previous work[,] but

cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the

administrative record *de novo* to determine whether there is substantial evidence

supporting the . . . decision and whether the Commissioner applied the correct legal

standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

<u>Analysis</u>

Cijka contends that substantial evidence does not support the ALJ's RFC determination. Specifically, he asserts that: (1) the ALJ did not adequately account for his limitations in social functioning and concentration, persistence, or pace; and (2) the ALJ did not properly evaluate the opinions of his treating psychologist J. David Egner, M.S. The Commissioner disagrees, arguing that the ALJ's decision is supported by substantial evidence and complies with the applicable legal standards.

**I.      Limitations in Social Functioning and Concentration, Persistence, or Pace**

Cijka first argues that the ALJ's finding that he had only "mild difficulties" in social functioning (AR 13) is not supported by the record. The regulations provide that

social functioning refers to a claimant's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals[, and] includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(2). A claimant may exhibit strength in social functioning by initiating social contacts with others, communicating clearly with others, or interacting and actively participating in group activities. *Id.* Also relevant is whether the claimant exhibits "cooperative behaviors." *Id.* The ALJ considered these factors in assessing Cijka's ability to function socially, stating as follows: "[Cijka] reported that he is able to spend most of his free time with his friends. During the period, he was consistently described as cooperative, and reported no difficulty getting along with others." (AR 13 (citing AR 744).) Given these findings, the ALJ concluded that Cijka had only "mild difficulties" in social functioning. (*Id.*)

Cijka's principal argument is that the testimony of medical expert Dr. James Claiborn, Ph.D., does not support the ALJ's finding of only mild difficulties in social functioning. But Dr. Claiborn's testimony is ambivalent, stating: "I think social functioning, *potentially* is somewhere between mild and moderately impaired. *It's hard to . . . say for sure*." (AR 56 (emphases added).) The ALJ accurately summarized Dr. Claiborn's testimony as follows: "[Dr. Claiborn] [testified] that [Cijka] could have only mild[-]to[-]moderate limitations in [social functioning]." (AR 13.) The ALJ ultimately determined that Cijka had only mild (instead of mild-to-moderate) difficulties in social functioning for the reasons stated above, and I find that each of these reasons is supported

8

by the record.  First, in a July 2009 Substance Abuse Evaluation, a Rutland Mental

Health Services provider recorded: "[Cijka] indicated that he spends most of his free time

with friends."  (AR 744.)  Although, as Cijka points out (Doc. 4 at 7–8), a claimant's

ability to spend time with family and friends does not *necessarily* mean that the claimant

is not limited in social functioning generally, it is a proper factor for an ALJ to consider.

As noted above, the regulatory definition of "[s]ocial functioning" explicitly refers to an

individual's capacity to interact with "other individuals," including "family members"

and "friends."  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(2).

    Second, Cijka's medical providers consistently described him in treatment notes as

being cooperative and having no cognitive deficits, making no mention of social

limitations or concentration problems.  (*See* AR 399 ("Cognition is normal for thought

process, reasoning, and judgment.  Alert, cooperative[,] and normal intelligence."), 402,

404, 407, 409, 411, 413, 417, 422, 427, 433, 438, 443, 446, 452, 455, 459, 462, 466, 469,

472, 485 ("Behavior is unremarkable.  Attitude is calm and cooperative.") ("[d]uring our

interview[,] [Cijka] was calm, polite, [and] soft spoken"), 491, 493, 495, 631, 795, 796.)

Although the July 2009 Evaluation records that Cijka stated he had experienced "serious

problems" getting along with his close friends in the prior 30 days and "serious

problems" getting along with family members, close friends, neighbors, and co-workers

during his lifetime; the Evaluation also records that Cijka stated he was only "slightly

bothered" by social problems in the prior 30 days, and treatment or counseling was only

"slightly important" for his social problems.  (AR 744.)  These statements reasonably

could be construed as conflicting, but it is for the ALJ—not the court—to resolve the

9

evidentiary conflict. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (conflicts in the evidence are for the Commissioner to resolve). It is also for the ALJ and not the court to assess Cijka's credibility, which is critical here, given that these recordings contained in the July 2009 Substance Abuse Evaluation are based merely on Cijka's subjective statements to a mental health counselor. *See Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir.1984) (It is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant."). Cijka does not contest the ALJ's negative assessment of his credibility (*see* AR 15), and substantial evidence supports this assessment (*see, e.g.*, AR 812 ("behaviors . . . over the course of the past several weeks indicate lying, deception[, and] questionable motives"), AR 813 ("[Cijka's] dishonesty is impeding recovery")).

    Cijka contends that the ALJ's mental RFC determination is inconsistent with the ALJ's finding that Cijka "has experienced one[-]to[-]two episodes of decompensation, each of extended duration." (AR 13.) But it can be inferred from the ALJ's decision— and the record itself demonstrates—that these episodes were associated with Cijka's substance abuse and not with a mental health impairment. (*See, e.g.*, AR 44, 483–84, 745.) The ALJ stated that Cijka "sought only very limited treatment for mental health disorders during the [alleged disability] period, as the overwhelming majority of his treatment was for substance abuse disorders." (AR 16.) This is an accurate depiction of the record. (*See, e.g.*, AR 379–508, 742–47, 792–813.) Dr. Claiborn agreed, testifying that "the only impairment that I think is established is polysubstance dependence" (AR 54), and that Cijka's limitations are "primarily" the result of "substance abuse" (AR 55).

10

Dr. Claiborn further testified that he believed Cijka's substance abuse was "material to [the] disability [decision]."  (AR 56.)

Cijka counters that he received frequent mental health (as opposed to substance abuse) treatment from psychologist Egner in 2008, 2009, and 2011.  (Doc. 4 at 8.)  But, as discussed in more detail below, the record contains no progress notes documenting or describing that treatment, and thus neither the ALJ nor the Court is able to assess whether the treatment was primarily for substance abuse or mental health issues.  Taken as a whole, the record supports Dr. Claiborn's testimony and the ALJ's finding that "[Cijka's] most limiting mental condition [wa]s drug abuse rather than mental illness" during the alleged disability period.  (AR 16; *see, e.g.*, AR 379–508, 742–47, 792–813.)  Even if the ALJ erred in finding Cijka less mentally limited than Dr. Claiborn testified he was, the error is harmless because Cijka has failed to demonstrate that his substance abuse is immaterial to the disability determination.  *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123–24 (2d Cir. 2012) (the claimant bears the burden of proving that his drug addiction or alcoholism is immaterial to the disability determination).

Finally, Cijka argues that the ALJ's determination regarding Cijka's social limitations is inconsistent with the ALJ's initial May 2011 decision and does not follow the instructions provided in the Appeals Council's September 2011 remand order.  As pointed out by the Commissioner, however, the Appeals Council did not bind the ALJ to her May 2011 decision, but rather ordered that the ALJ "issue a new decision."  (AR 129.)  Moreover, the Appeals Council itself was satisfied with the ALJ's new decision, finding no basis to review it.  (AR 1–3.)  Furthermore, although the regulations state that

the ALJ "shall take any action that is ordered by the Appeals Council," 20 C.F.R. § 416.1477(b), the crucial inquiry remains whether substantial evidence supports the ALJ's decision, *see Hernandez-Devereaux v. Astrue*, 614 F. Supp. 2d 1125, 1134 (D. Or. 2009), and in this case, I find that substantial evidence supports the ALJ's decision for the reasons stated herein.

## II.    Opinions of Treating Psychologist Egner

Next, Cijka argues that the ALJ erred in giving little weight to the opinions of treating psychologist Egner, M.S., who treated Cijka's mental health issues for the following approximate periods: October 2008 through February 2009, February 2011 through June 2011, and October 2011.  (AR 618, 758.)  In April 2011, Egner opined that Cijka had either a "[s]ubstantial loss of ability to function" or "[n]o useful ability to function" in most work-related functional areas (AR 750–51) due to his chronic severe personality disorder and bipolar disorder (AR 752).[2]

The treating physician rule applies to Egner's opinions, given that the regulations define "acceptable medical sources" to include "[l]icensed or certified psychologists," 20 C.F.R. § 404.1513(a)(2), and the Social Security Administration's Program Operations Manual System ("POMS") provides that an individual is considered an "acceptable medical source" if he or she "[i]s in Vermont . . . and shows as all or part of his or her

---

[2] Approximately two months earlier, in February 2011, Egner opined in a one-page "Training and Employment Medical Report for General Assistance and 3SquarestVT" that Cijka had learning problems, posttraumatic stress syndrome, and clinical depression; was emotionally isolated and self-destructive; and was unable to work in any type of employment.  (AR 618.)  The ALJ was not required to afford weight to these opinions, as no functional limitations are noted and the conclusion regarding Cijka's ability to work is on an issue reserved to the Commissioner.  *See* SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996); 20 C.F.R. § 404.1527(d)(1).

title 'M.A., psychologist,'" which Egner does (*see, e.g.*, 618, 752). POMS DI

22505.004(A)(3), available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0422505004

(last visited Mar. 31, 2014). Under the "treating physician rule," a treating physician's

opinion on the nature and severity of a claimant's condition is entitled to "controlling

weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in [the] record." 20

C.F.R. § 404.1527(c)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 567–69 (2d Cir. 1993).

When the ALJ decides to afford less than controlling weight to a treating physician's

opinion, the ALJ must consider the regulatory factors—including the length of the

treatment relationship, the frequency of examination, whether the opinion is supported,

and whether the opinion is consistent with the record as a whole—in determining how

much weight is appropriate. *Richardson v. Barnhart*, 443 F. Supp. 2d 411, 417

(W.D.N.Y. 2006) (citing *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)); *see* 20

C.F.R. § 404.1527(c).

    The ALJ gave "little weight" to Egner's opinions on the grounds that they are

completely unsupported and inconsistent with other evidence in the record including Dr.

Claiborn's testimony. (AR 17.) These were proper factors for the ALJ to consider in

assessing Egner's opinions, *see* 20 C.F.R. § 404.1527(c)(3), (4), and the ALJ's findings

are supported by substantial evidence. Specifically, Egner's opinions are inconsistent

with the record, which, as stated above, includes treatment notes describing Cijka as

cooperative and having no cognitive deficits. (*See* AR 399, 402, 404, 407, 409, 411, 413,

417, 422, 427, 433, 438, 443, 446, 452, 455, 459, 462, 466, 469, 472, 485, 491, 493, 495,

631, 795, 796.)  Egner's opinions are also inconsistent with Dr. Claiborn's opinions,

discussed above.  (*See* AR 54–56.)  Furthermore, as the ALJ stated, Egner's opinions are

unsupported: they "fail[] to detail any aspect of [Cijka's] longitudinal treatment or

functional status," "fail[] to offer any insight into [Cijka]s mental status or functioning,"

and "fail[] to indicate the diagnostic criteria upon which [Cijka's] diagnosis was made."

(AR 17.)  Most importantly, the record contains none of Egner's progress notes

documenting or summarizing his treatment of Cijka.  The only document in the record

which references Egner's treatment of Cijka is a one-page printout listing the dates of

Egner's "visits" with Cijka between October 2008 and October 2011.  (AR 758.)

Another proper rationale provided by the ALJ for affording little weight to Egner's

opinions is Egner's failure to discuss Cijka's sustained history of substance abuse.  (AR

17.)  *See* 20 C.F.R. § 404.1527(c)(3), (6).  The ALJ reasonably shared the concerns stated

by Dr. Claiborn at the administrative hearing:

> I'm . . . concerned because Mr. Egn[er]'s report makes absolutely no
> mention of substance abuse[,] and . . . it's quite apparent from the rest of
> the record that that's been a . . . significant part of what's been going on
> with [Cijka] over a period of years here.  So, I don't know [if] Mr. Egn[er]
> was not aware of it . . ., or somehow thought it was not relevant to
> anything.  But it . . . certainly makes it difficult for me to . . . take his
> evaluation . . . as establishing anything.

(AR 55; *see* AR 17.)  Cijka contends Egner's vague and passing use of the term

"neurochemical" in his opinion indicates that he was aware of Cijka's substance abuse

problems.  (*See* Doc. 4 at 11, Doc. 8 at 2; *see also* Docs. 8-1, 8-2.)  But it is not the job of

the court or the ALJ to decipher the meaning of ambiguous medical terms used by

medical providers in their opinions.  *See Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir.

2008) ("Neither a reviewing judge nor the Commissioner is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion, or indeed for any competent medical opinion.") (internal quotation marks and citations omitted); *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982) ("because an [ALJ] . . . is not a doctor, he should avoid commenting on the meaning of a test or clinical x-ray when there has been no supporting expert testimony").  Dr. Claiborn was qualified to interpret Egner's opinions, including Egner's use of the word "neurochemical," and he found no evidence that Egner considered Cijka's substance abuse.

Finally, Cijka asserts that, in analyzing Egner's opinions, the ALJ failed to address "three of the four . . . factors required to evaluate treating opinion evidence."  (Doc. 4 at 10.)  Not only does this argument fail on the facts (*see* AR 17, where the ALJ explicitly considered multiple factors, including consistency and supportability, in analyzing Egner's opinions, as discussed above), but it is also not supported by the law, as the Second Circuit does not require "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation[s] are clear," *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

## Conclusion

The primary evidence Cijka relies on to establish that his mental impairments were more limiting than the ALJ found are the opinions of treating psychologist Egner.  The ALJ properly rejected those opinions, however, for the reasons explained above, particularly the lack of any treatment notes to support them.  Moreover, substantial evidence supports the ALJ's mental RFC determination, and particularly the ALJ's

finding that Cijka had only mild difficulties in social functioning and moderate difficulties in concentration, persistence, or pace during the alleged disability period. Even assuming the evidence required a more restrictive mental RFC based on Cijka's substance abuse, the ALJ's decision that he was not disabled would be unaffected because Cijka has not demonstrated that his substance abuse was immaterial to the disability determination. *See Cage*, 692 F.3d at 123–24.

For these reasons, I recommend that Cijka's motion (Doc. 4) be DENIED, the Commissioner's motion (Doc. 7) be GRANTED, and the decision of the Commissioner be AFFIRMED.

Dated at Burlington, in the District of Vermont, this 1st day of April, 2014.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).